No.21-4760LDH



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 15 2021 ★

BROOKLYN OFFICE

United States District
Court
For The Eastern District
Brooklyn



RECEIVED
NOV 15 2021
PRO SE OFFICE

Raul Baez, 71515-050
Metropolitan Detention Center, MDC BKLYN
PO Box 329002
Brooklyn NY 11232

Brief Adduced by,

_____

S.F. Patrick Mescall Esq.

cc. all counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
*********************************X
Mr. Raul Baez,          )
                Petitioner,   )
                              )   No. 21-4760LDH
        -in opposition to-    )
                              )
                              )
Warden H. Tellez, MDC BKLYN   )
                              )
                Respondents   )
*********************************X



Reply To Letter From US Dep't. Of Justice For Opposition To
Writ Of Habeas Corpus For Earned Time Credits, Substantive Due
Process.

**BACKGROUND I.**

Petitioner, Baez has filed a Writ For Habeas review under 28

U.S.C. § 2241,U.S.CONST AMEND 5; First Step Act § 404 115-136 Pub

No. L. 2849.  Baez has requested the Court review under Habeas

law, inter-alia, that the Bureau Of Prisons has [n]ot applied

the Earned Timed Credits from the Legislative intentent of  the

First Step Act and Ratio legis of penal system. [A]nd, despite

the fact that Baez **has** exhausted fully under law **all** administrative

remedies available to him, the Government is unaware of his fully

exhausted claims and somehow, believes that Baez is "procedurally

defaulted" and he should adduce "cause" and "prejudice" for his

failure.  The Governments arguments are wrong.

**LEGAL ADDUCTION II**

Tellingly, we will address the US Attorney's mistaken

view of the plain ordinary meaning of the First Step Act, exhaus-

tion requirements under Supreme Court law,  and substantive Due

Process pursuant to the fundamental rights and substantive prison

rights promulgated by Constitutional law, Congress and the BOP.

(1.)  Exhaustion is Fully Complete

Baez has fully exhausted all available BOP remedies under

1.

law and in the wake of his Earned Time Credits Due, the
conduct of the Bureau Of Prisons undermines ratio legis and
the purpose of the First Step Act or any other recidivism reduct-
ion based program that would reduce the revolving door of prison
inmates and save tax payers millions. Because "Federal Decision-
Making" has [n]ot been a prequisite to ajudication when an
administrative body has predetermined the issue, delays the proc-
ess with unreasonable short timeframes for responses, and in this
case, destroys or alters the BP 9, 10 or 11 form.  But Baez sent
in a copy of the BP 8, 9, and 10 he submitted.  However, the BOP
lost, destroyed or misplaced the BP 11 submitted by Baez because
it was placed in the mail to be sent to a  Washington DC office.
And, Baez has not heard a word with respect to that specific filing
a few months back. However, as the US Attorney stated in her
letter of opposition, "Baez should exhaust some more" when in truth
and fact, the bias and "pre-determined" conclusion from her office
proves that any further administrative action order for Baez would
be futile because the issue is already determined.(see) "Letter"
from US Attorney's Brief III). [B]ut, this case is not only about
the issue already pre-decided, it is about the BOP's MDC Bklyn
destroying-altering and fequently misplacing BP, 10 and 11 forms
that LEAVE THE INSTITUTION and are sent to a different" head of
administrative body. Tellingly, at nearly everything that the BOP
does, it is problematic. However, under McCarthy v. Madigan, 403
U.S. 515 (1991), Baez has fully exhausted and request that the
Honorable Judge Hall proceed to the merits accordingly.

(2.)  U.S. Attorney's Office Misinterpets 18 US.C.§3632(d)(4)(D)
      AND First Step Act §§ Pub L. No. 115-391,132 Stat, 5194

        Because the First Step Act is clear "on its face" under

the plain ordinary meaning rule, this Honorable Court should follow it's meaning, on it's face and [N]ot allow the Government any further delay by kicking the can down the road pursuant to Earned Time Credits. Accordingly, the statute is exhibited, and a Memorandum from the Senate Judiciary Comittee and the BP 10 that Baez **DID** FILE and the response to that BP 10 adducing the narrative adduced by Baez.(see) Exhibit # 1. highlighted areas).

The BOP has promulgated a ad-hoc procedure that impliments Earned Time Credits by, January 15th 2020, Not 2022 as the AUSA has briefed mistakenly or to confuse the Court. [A]nd, while on [t]ha[t] note, Baez is not arguing anything respective in the nature of the unreviewable Home Confinement statute. Baez, is merely stating that this underlying case is analogous to a substantive Due Process issue because of his vested fundamental rights.  That being, the prohibitions against arbitrary ad hoc laws or interpretations, and cruel and unusual punishment. Would it not be a complete undermining of the PATTERn's objective to consistantly delay, delay and kick the can down the road for inmates that work hard and prepare for society? Would not this send a terrible scattershot of deterrance towards programing, learning different skills, prepairing for the street by correcting oneself during their incarceration.   Would not Congressional intent of recidivism reduction based programs be diluted by a another denial of what is right under clear law? Respectfully, Baez calls upon this Court to send a message to the BOP, to get their act together, fix the Earned Time Credit problems and allow for the system of fairness and integrity to be not nugatory with another denial. Accordingly, Baez request this Court contemplate stare decisis for **THIS** CASE and GRANT the <u>28 U.S.C. § 2241</u> thereby,

As the Court is well aware that the First Step Act §§ allowed for the Bureau Of Prisons a phase-in period.  However, the time-frame is the question that seems appropriate herein for the Judge, But the statute is additionally pretty clear on it's face. [A]nd, there should be a 2year time allowance and nothing further. [But, because the law is still developing in these types of cases, a common-sense, logical ordinary plain meaning should be applied accordingly.  The Government wants to stall, as usual and not allow for Earned Time Credits for someone who deserves it more than most.  Accordingly, Baez respectfully request that this Court **grant** the Habeas petitioners call for review of a First Step Act credit for time earned, clearly by law.

CONCLUSION III.

Raul Baez, being assisted by his associate S.F. Mescall, both agree that, inter-alia, there is much needed pursuant to sound jurisprudence with respect to this issue.  The AUSA sends unpublished, pay for case-case law that is [n]ot binding whatso-ever on this court, and, out-of-circuit persuasive authority that is problematic at best, ¯ not analogous to this instant matter, and would undermine ratio legis and the Congressional intent. Wherefore, Baez respectfully request,(1) time served, or in the alternative, 5months off supervised release sentence for ETC under the First Step Act.

Raul Baez, #71715-050

S.F. Patrick Mescall Esq.
MDC BKLYN
Metropolitan Detention Ct
PO Box 329002
Brooklyn NY 11232

cc. all counsel

4.

Declaration Of Raul Baez and S.F. Patrick Mescall Esq.


Accordingly, under 28 U.S.C. § 1746, the foregoing facts are true accurate depictions of the conduct that took place at MDC BKLYN. There is nothing speculative or convoluted but accurate, onerous experiences nevertheless.

(1.)  The BOP has many problems with it's facility MDC BKLYN, where they loose, misplace and or destroy administrative remedy forms and stall the process.

(2.)  MDC BKLYN intercepts, open legal mail absent the inmate being present.

(3.)  MDC BKLYN Unit team is very unorganized, misplaces forms and gives most inmates more stories than a pregnant nun.

(4.)  Before Baez started the paperwork on his Earned Time Credit he begged his team at MDC BKLYN to apply the time owed, he received nothing but the run-around.

(5.)  Because Baez is smart enough to navigate the administrative process and prepare legal brief with his associate, he can at least beg the Judiciary to do the right thing.

(6.)  Baez and Mescall have seen dozens of inmates give up their aspirations, goals and recidivism based programs because they know the bOP will not honor the FSA credits at all.

(7.)  If GED was NOT forced by potential incidental violation, most inmates absent GED would opt-out of the program in light of the bOP's failure to apply ETC.

(8.)  Inmates should be rewarded for their hard work and prove that the system works and is not rigged or unfair.


Raul Baez# 71515-050

SF Patrick Mescall


MDC BKLYN PO BOX 329002 Brooklyn NY 11232


DATE) 11/8/21

***NOTE Of Transfer To Halfway House*****

Raul Baez will be stay at: "The Kintock Group Inc"
                           37-47 Legal St.
                           Newark NJ 07114

RRc Phone Number is: 973-622-1400


As of December (14 th) of this year 2021, Baez will no longer
be at MDC Brooklyn.  He will be at the Halfway House address
above.  Thank you.

```
RAUL BAEZ, 71515-050
BROOKLYN MDC     UNT: K CADRE M    QTR: D03-003L
P.O. BOX 329001
BROOKLYN,  NY 11232
```

# MAILED FROM NERO AUGUST 13, 2021

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: BAEZ, RAUL   71515-050   NORTH   MDC-BKO
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

PLEASE SEE THE ATTACHED LETTER DATED MAY 17, 2021
AND THE RELATED ENCLOSED ATTACHMENTS.


5-17-21                                          Raul Baez
DATE                                     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____            _____
DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____            _____
DATE                                 SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                                                        BP-230(13)
                                                              JUNE 2002

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: BAEZ, RAUL     71515-050     5 NORTH     MDC-BRO

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**

PLEASE SEE THE ATTACHED LETTER DATED MAY 17, 2021
AND THE RELATED ENCLOSED ATTACHMENTS,

5-17-21

DATE                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                 CASE NUMBER: 1079920R1

**Part C - RECEIPT**

                                     CASE NUMBER: _____

Return to: _____

          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE                        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN      PRINTED ON RECYCLED PAPER                             BP-230(13)
                                                              JUNE 2002

BAEZ, Raul
Reg. No. 71515-050
Appeal No. 1079926-R1
Page One

---

## Part B - Response

You appeal the response of the Warden of MDC Brooklyn. You request
to receive time credits under the First Step Act (FSA) based upon your
work history and program completions.

Under the FSA, eligible inmates may earn time credits for successfully
completing approved Evidence Based Recidivism Reduction (EBRR)
programs or Productive Activities (PA) assigned to inmates based on
their assessed needs. A federal inmate who was sentenced under the
U.S. Code, who is in the custody of the Bureau of Prisons, and who
is not serving a term of imprisonment for a conviction specified in
18 U.S.C. § 3632(d)(4)(D), is eligible to earn Federal Time Credits
(FTC). FTCs are applied toward pre-release custody. An inmate cannot
earn FTC if he is serving a sentence for a disqualifying offense or
has a disqualifying prior conviction. The BOP may award FTC to inmates
who have successfully completed EBRR programming or PA which were
assigned after January 15, 2020.

A review of your appeal reveals the Warden adequately addressed your
complaint. The Bureau of Prisons is finalizing the method by which
FTC is calculated. As additional guidance concerning the application
of FTC is received, it will be distributed to the inmate population.
This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons. Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of this
response.

Date:  July 23, 2021

N. C. ENGLISH
Regional Director

BAEZ, Raul
Reg. No. 71515-050
Appeal No. 1079926-R1
Page One

---

### Part B - Response

You appeal the response of the Warden of MDC Brooklyn. You request to receive time credits under the First Step Act (FSA) based upon your work history and program completions.

Under the FSA, eligible inmates may earn time credits for successfully completing approved Evidence Based Recidivism Reduction (EBRR) programs or Productive Activities (PA) assigned to inmates based on their assessed needs. A federal inmate who was sentenced under the U.S. Code, who is in the custody of the Bureau of Prisons, and who is not serving a term of imprisonment for a conviction specified in 18 U.S.C. § 3632(d)(4)(D), is eligible to earn Federal Time Credits (FTC). FTCs are applied toward pre-release custody. An inmate cannot earn FTC if he is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The BOP may award FTC to inmates who have successfully completed EBRR programming or PA which were assigned after January 15, 2020.

A review of your appeal reveals the Warden adequately addressed your complaint. The Bureau of Prisons is finalizing the method by which FTC is calculated. As additional guidance concerning the application of FTC is received, it will be distributed to the inmate population. This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: July 23, 2021

N. C. ENGLISH
Regional Director

## § 3631.  Duties of the Attorney General

(a) In general.   The Attorney General shall carry out this subchapter [18 USCS §§ 3631 et seq.] in consultation with—

(1) the Director of the Bureau of Prisons;

(2) the Director of the Administrative Office of the United States Courts;

(3) the Director of the Office of Probation and Pretrial Services;

(4) the Director of the National Institute of Justice;

(5) the Director of the National Institute of Corrections; and

(6) the Independent Review Committee authorized by the First Step Act of 2018[.]

(b) Duties.   The Attorney General shall—

(1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter [enacted Dec. 21, 2018];

(2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633 [18 USCS § 3633];

(3) conduct ongoing research and data analysis on—

(A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;

(B) the most effective and efficient uses of such programs;

(C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and

(D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without reducing job opportunities for other workers in the United States;

(4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

(A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter [enacted Dec. 21, 2018];

(B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);

USCS                                                   1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(C)** an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;

**(D)** statistical validation of any tools that the risk and needs assessment system uses; and

**(E)** an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;

**(5)** make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible; and

**(6)** report to Congress in accordance with section 3634 [18 USCS § 3634].

**HISTORY:**
Added Dec. 21, 2018, P. L. 115-391, Title I, § 101(a), 132 Stat. 5195.

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3624

**(g) Prerelease custody or supervised release for risk and needs assessment system participants.**

**(1)** Eligible prisoners. This subsection applies in the case of a prisoner (as such term is defined in section 3635 [18 USCS § 3635]) who—

**(A)** has earned time credits under the risk and needs assessment system developed under subchapter D [18 USCS §§ 3631 et seq.] (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

**(B)** has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

**(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

**(D) (i)** in the case of a prisoner being placed in prerelease custody, the prisoner—

**(I)** has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

**(II)** has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—

**(aa)** the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

**(bb)** the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

**(cc)** the prisoner is unlikely to recidivate; or

**(ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

**(2)** Types of prerelease custody. A prisoner shall be placed in prerelease custody as follows:

**(A)** Home confinement.

**(i)** In general. A prisoner placed in prerelease custody pursuant to this subsection who is placed in home confinement shall—

**(I)** be subject to 24-hour electronic monitoring that enables the prompt identification of the prisoner, location, and time, in the case of any violation of subclause (II);

**(II)** remain in the prisoner's residence, except that the prisoner may

USCS                                                                  1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

leave the prisoner's home in order to, subject to the approval of the Director of the Bureau of Prisons—

**(aa)** perform a job or job-related activities, including an apprenticeship, or participate in job-seeking activities;

**(bb)** participate in evidence-based recidivism reduction programming or productive activities assigned by the System, or similar activities;

**(cc)** perform community service;

**(dd)** participate in crime victim restoration activities;

**(ee)** receive medical treatment;

**(ff)** attend religious activities; or

**(gg)** participate in other family-related activities that facilitate the prisoner's successful reentry such as a family funeral, a family wedding, or to visit a family member who is seriously ill; and

**(III)** comply with such other conditions as the Director determines appropriate.

**(ii)** Alternate means of monitoring. If the electronic monitoring of a prisoner described in clause (i)(I) is infeasible for technical or religious reasons, the Director of the Bureau of Prisons may use alternative means of monitoring a prisoner placed in home confinement that the Director determines are as effective or more effective than the electronic monitoring described in clause (i)(I).

**(iii)** Modifications. The Director of the Bureau of Prisons may modify the conditions described in clause (i) if the Director determines that a compelling reason exists to do so, and that the prisoner has demonstrated exemplary compliance with such conditions.

**(iv)** Duration. Except as provided in paragraph (4), a prisoner who is placed in home confinement shall remain in home confinement until the prisoner has served not less than 85 percent of the prisoner's imposed term of imprisonment.

**(B)** Residential reentry center. A prisoner placed in prerelease custody pursuant to this subsection who is placed at a residential reentry center shall be subject to such conditions as the Director of the Bureau of Prisons determines appropriate.

**(3)** Supervised release. If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632 [18 USCS § 3632].

**(4)** Determination of conditions. In determining appropriate conditions for prisoners placed in prerelease custody pursuant to this subsection, the Director of the Bureau of Prisons shall, to the extent practicable, provide that increasingly less restrictive conditions shall be imposed on prisoners who

USCS                                                                 2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

demonstrate continued compliance with the conditions of such prerelease custody, so as to most effectively prepare such prisoners for reentry.

**(5)** Violations of conditions. If a prisoner violates a condition of the prisoner's prerelease custody, the Director of the Bureau of Prisons may impose such additional conditions on the prisoner's prerelease custody as the Director of the Bureau of Prisons determines appropriate, or revoke the prisoner's prerelease custody and require the prisoner to serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison. If the violation is nontechnical in nature, the Director of the Bureau of Prisons shall revoke the prisoner's prerelease custody.

**(6)** Issuance of guidelines. The Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining—

  **(A)** the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection; and

  **(B)** consequences for a violation of a condition of such prerelease custody by such a prisoner, including a return to prison and a reassessment of evidence-based recidivism risk level under the System.

**(7)** Agreements with United States probation and pretrial services. The Director of the Bureau of Prisons shall, to the greatest extent practicable, enter into agreements with United States Probation and Pretrial Services to supervise prisoners placed in home confinement under this subsection. Such agreements shall—

  **(A)** authorize United States Probation and Pretrial Services to exercise the authority granted to the Director pursuant to paragraphs (3) and (4); and

  **(B)** take into account the resource requirements of United States Probation and Pretrial Services as a result of the transfer of Bureau of Prisons prisoners to prerelease custody or supervised release.

**(8)** Assistance. United States Probation and Pretrial Services shall, to the greatest extent practicable, offer assistance to any prisoner not under its supervision during prerelease custody under this subsection.

**(9)** Mentoring, reentry, and spiritual services. Any prerelease custody into which a prisoner is placed under this subsection may not include a condition prohibiting the prisoner from receiving mentoring, reentry, or spiritual services from a person who provided such services to the prisoner while the prisoner was incarcerated, except that the warden of the facility at which the prisoner was incarcerated may waive the requirement under this paragraph if the warden finds that the provision of such services would pose a significant security risk to the prisoner, persons who provide such services, or any other person. The warden shall provide written notice of any such waiver to the person providing such services and to the prisoner.

**(10)** Time limits inapplicable. The time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection.

**(11)** Prerelease custody capacity. The Director of the Bureau of Prisons shall ensure there is

USCS         3

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

sufficient prerelease custody capacity to accommodate all eligible prisoners.

USCS                                                    4

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

**(h)** **Implementation of risk and needs assessment system.**

**(1)** In general. Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D [18 USCS §§ 3631 et seq.], the Director of the Bureau of Prisons shall, in accordance with that subchapter—

**(A)** implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

**(B)** begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

**(C)** begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

**(2)** Phase-in. In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall—

**(A)** provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

**(B)** develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

**(3)** Priority during phase-in. During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.

**(4)** Preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives. Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D [18 USCS §§ 3631 et seq.].

**(5)** Recidivism reduction partnerships. In order to expand evidence-based recidivism reduction programs and productive activities, the Attorney General shall develop policies for the warden of each prison of the Bureau of Prisons to enter into partnerships, subject to the availability of appropriations, with any of the following:

**(A)** Nonprofit and other private organizations, including faith-based, art, and community-based organizations that will deliver recidivism reduction programming on a paid or volunteer

USCS                                                                     1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

basis.

(B) Institutions of higher education (as defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)) that will deliver instruction on a paid or volunteer basis.

(C) Private entities that will—

(i) deliver vocational training and certifications;

(ii) provide equipment to facilitate vocational training or employment opportunities for prisoners;

(iii) employ prisoners; or

(iv) assist prisoners in prerelease custody or supervised release in finding employment.

(D) Industry-sponsored organizations that will deliver workforce development and training, on a paid or volunteer basis.

(6) Requirement to provide programs to all prisoners; priority. The Director of the Bureau of Prisons shall provide all prisoners with the opportunity to actively participate in evidence-based recidivism reduction programs or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration. Priority for participation in recidivism reduction programs shall be given to medium-risk and high-risk prisoners, with access to productive activities given to minimum-risk and low-risk prisoners.

(7) Definitions. The terms in this subsection have the meaning given those terms in section 3635 [18 USCS § 3635].

USCS                                                                                   2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(3) Evidence-based recidivism reduction program.** The term "evidence-based recidivism reduction program" means either a group or individual activity that—

    **(A)** has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

    **(B)** is designed to help prisoners succeed in their communities upon release from prison; and

    **(C)** may include—

        **(i)** social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

        **(ii)** family relationship building, structured parent-child interaction, and parenting skills;

        **(iii)** classes on morals or ethics;

        **(iv)** academic classes;

        **(v)** cognitive behavioral treatment;

        **(vi)** mentoring;

        **(vii)** substance abuse treatment;

        **(viii)** vocational training;

        **(ix)** faith-based classes or services;

        **(x)** civic engagement and reintegrative community services;

        **(xi)** a prison job, including through a prison work program;

        **(xii)** victim impact classes or other restorative justice programs; and

        **(xiii)** trauma counseling and trauma-informed support programs.

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(5) Productive activity.**   The term "productive activity" means either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs described in paragraph (1) to other prisoners.

**(6) Risk and needs assessment tool.**   The term "risk and needs assessment tool" means an objective and statistically validated method through which information is collected and evaluated to determine—

      **(A)** as part of the intake process, the risk that a prisoner will recidivate upon release from prison;

      **(B)** the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and

      **(C)** the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and of regression, that are dynamic and that can reasonably be expected to change while in prison.

**HISTORY:**

Added Dec. 21, 2018, P. L. 115-391, Title I, § 101(a), 132 Stat. 5207.

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 3632.  Development of risk and needs assessment system

(a) **In general.**  Not later than 210 days after the date of enactment of this subchapter [enacted Dec. 21, 2018], the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter [18 USCS §§ 3631 et seq.] as the "System"), which shall be used to—

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

(A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

(B) to address the specific criminogenic needs of the prisoner; and

(C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624 [18 USCS § 3624]; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia. In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

(b) **Assignment of evidence-based recidivism reduction programs.**  The System shall provide guidance on the type, amount, and intensity of evidence-based recidivism reduction programming and productive activities that shall be assigned for each prisoner, including—

(1) programs in which the Bureau of Prisons shall assign the prisoner to participate, according to

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

the prisoner's specific criminogenic needs; and

  **(2)** information on the best ways that the Bureau of Prisons can tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism.

  **(c) Housing and assignment decisions.**   The System shall provide guidance on program grouping and housing assignment determinations and, after accounting for the safety of each prisoner and other individuals at the prison, provide that prisoners with a similar risk level be grouped together in housing and assignment decisions to the extent practicable.

  **(d) Evidence-based recidivism reduction program incentives and productive activities rewards.**   The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:

  **(1) Phone and visitation privileges.**   A prisoner who is successfully participating in an evidence-based recidivism reduction program shall receive—

    **(A)** phone privileges, or, if available, video conferencing privileges, for up to 30 minutes per day, and up to 510 minutes per month; and

    **(B)** additional time for visitation at the prison, as determined by the warden of the prison.

  **(2) Transfer to institution closer to release residence.**   A prisoner who is successfully participating in an evidence-based recidivism reduction program shall be considered by the Bureau of Prisons for placement in a facility closer to the prisoner's release residence upon request from the prisoner and subject to—

    **(A)** bed availability at the transfer facility;

    **(B)** the prisoner's security designation; and

    **(C)** the recommendation from the warden of the prison at which the prisoner is incarcerated at the time of making the request.

  **(3) Additional policies.**   The Director of the Bureau of Prisons shall develop additional policies to provide appropriate incentives for successful participation and completion of evidence-based recidivism reduction programming. The incentives shall include not less than 2 of the following:

    **(A)** Increased commissary spending limits and product offerings.

    **(B)** Extended opportunities to access the email system.

    **(C)** Consideration of transfer to preferred housing units (including transfer to different prison facilities).

    **(D)** Other incentives solicited from prisoners and determined appropriate by the Director.

  **(4) Time credits.**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

**(A) In general.**   A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

**(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

**(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

**(B) Availability.**   A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

**(i)** prior to the date of enactment of this subchapter [enacted Dec. 21, 2018]; or

**(ii)** during official detention prior to the date that the prisoner's sentence commences under section 3585(a) [18 USCS § 3585(a)].

**(C) Application of time credits toward prerelease custody or supervised release.**   Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g) [18 USCS § 3624(g)], into prerelease custody or supervised release.

**(D) Ineligible prisoners.**   A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:

**(i)** Section 32 [18 USCS § 32], relating to destruction of aircraft or aircraft facilities.

**(ii)** Section 33 [18 USCS § 33], relating to destruction of motor vehicles or motor vehicle facilities.

**(iii)** Section 36 [18 USCS § 36], relating to drive-by shootings.

**(iv)** Section 81 [18 USCS § 81], relating to arson within special maritime and territorial jurisdiction.

**(v)** Section 111(b) [18 USCS § 111(b)], relating to assaulting, resisting, or impeding certain officers or employees using a deadly or dangerous weapon or inflicting bodily injury.

**(vi)** Paragraph (1), (7), or (8) of section 113(a) [18 USCS § 113(a)], relating to assault with intent to commit murder, assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, or assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or

USCS                                        3

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

suffocate.

    **(vii)** Section 115 [18 USCS § 115], relating to influencing, impeding, or retaliating against a Federal official by injuring a family member, except for a threat made in violation of that section.

    **(viii)** Section 116 [18 USCS § 116], relating to female genital mutilation.

    **(ix)** Section 117 [18 USCS § 117], relating to domestic assault by a habitual offender.

    **(x)** Any section of chapter 10 [18 USCS §§ 175 et seq.], relating to biological weapons.

    **(xi)** Any section of chapter 11B [18 USCS §§ 229 et seq.], relating to chemical weapons.

    **(xii)** Section 351 [18 USCS § 351], relating to Congressional, Cabinet, and Supreme Court assassination, kidnapping, and assault.

    **(xiii)** Section 521 [18 USCS § 521], relating to criminal street gangs.

    **(xiv)** Section 751 [18 USCS § 751], relating to prisoners in custody of an institution or officer.

    **(xv)** Section 793 [18 USCS § 793 ], relating to gathering, transmitting, or losing defense information.

    **(xvi)** Section 794 [18 USCS § 794], relating to gathering or delivering defense information to aid a foreign government.

    **(xvii)** Any section of chapter 39 [18 USCS § 831 et seq.], relating to explosives and other dangerous articles, except for section 836 [18 USCS § 836] (relating to the transportation of fireworks into a State prohibiting sale or use).

    **(xviii)** Section 842(p) [18 USCS § 842(p)], relating to distribution of information relating to explosives, destructive devices, and weapons of mass destruction, but only if the conviction involved a weapon of mass destruction (as defined in section 2332a(c) [18 USCS § 2332a(c)]).

    **(xix)** Subsection (f)(3), (h), or (i) of section 844 [18 USCS § 844], relating to the use of fire or an explosive.

    **(xx)** Section 871 [18 USCS § 871], relating to threats against the President and successors to the Presidency.

    **(xxi)** Section 879 [18 USCS § 879], relating to threats against former Presidents and certain other persons.

    **(xxii)** Section 924(c) [18 USCS § 924(c)], relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime.

USCS                                        4

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(xxiii) Section 1030(a)(1) [18 USCS § 1030(a)(1)], relating to fraud and related activity in connection with computers.

(xxiv) Section 1091 [18 USCS § 1091], relating to genocide.

(xxv) Any section of chapter 51 [18 USCS §§ 1111 et seq.], relating to homicide, except for section 1112 [18 USCS § 1112] (relating to manslaughter), 1113 [18 USCS § 1113] (relating to attempt to commit murder or manslaughter, but only if the conviction was for an attempt to commit manslaughter), 1115 [18 USCS § 1115] (relating to misconduct or neglect of ship officers), or 1122 [18 USCS § 1122] (relating to protection against the human immunodeficiency virus).

(xxvi) Any section of chapter 55 [18 USCS §§ 1201 et seq.], relating to kidnapping.

(xxvii) Any offense under chapter 77 [18 USCS §§ 1581 et seq.], relating to peonage, slavery, and trafficking in persons, except for sections 1593 through 1596 [18 USCS §§ 1593-1596].

(xxviii) Section 1751 [18 USCS § 1751], relating to Presidential and Presidential staff assassination, kidnapping, and assault.

(xxix) Section 1791 [18 USCS § 1791], relating to providing or possessing contraband in prison.

(xxx) Section 1792 [18 USCS § 1792], relating to mutiny and riots.

(xxxi) Section 1841(a)(2)(C) [18 USCS § 1841(a)(2)(C)], relating to intentionally killing or attempting to kill an unborn child.

(xxxii) Section 1992 [18 USCS § 1992], relating to terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on water, or through the air.

(xxxiii) Section 2113(e) [18 USCS § 2113(e)], relating to bank robbery resulting in death.

(xxxiv) Section 2118(c) [18 USCS § 2118(c)], relating to robberies and burglaries involving controlled substances resulting in assault, putting in jeopardy the life of any person by the use of a dangerous weapon or device, or death.

(xxxv) Section 2119 [18 USCS § 2119], relating to taking a motor vehicle (commonly referred to as "carjacking").

(xxxvi) Any section of chapter 105 [18 USCS §§ 2151 et seq.], relating to sabotage, except for section 2152 [18 USCS § 2152].

(xxxvii) Any section of chapter 109A [18 USCS §§ 2241 et seq.], relating to sexual abuse.

(xxxviii) Section 2250 [18 USCS § 2250], relating to failure to register as a sex

USCS                                                    5

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

offender.

(xxxix) Section 2251 [18 USCS § 2251], relating to the sexual exploitation of children.

(xl) Section 2251A [18 USCS § 2251A], relating to the selling or buying of children.

(xli) Section 2252 [18 USCS § 2252], relating to certain activities relating to material involving the sexual exploitation of minors.

(xlii) Section 2252A [18 USCS § 2252A], relating to certain activities involving material constituting or containing child pornography.

(xliii) Section 2260 [18 USCS § 2260], relating to the production of sexually explicit depictions of a minor for importation into the United States.

(xliv) Section 2283 [18 USCS § 2283], relating to the transportation of explosive, biological, chemical, or radioactive or nuclear materials.

(xlv) Section 2284 [18 USCS § 2284], relating to the transportation of terrorists.

(xlvi) Section 2291 [18 USCS § 2291], relating to the destruction of a vessel or maritime facility, but only if the conduct that led to the conviction involved a substantial risk of death or serious bodily injury.

(xlvii) Any section of chapter 113B [18 USCS §§ 2331 et seq.], relating to terrorism.

(xlviii) Section 2340A [18 USCS § 2340A], relating to torture.

(xlix) Section 2381 [18 USCS § 2381], relating to treason.

(l) Section 2442 [18 USCS § 2442], relating to the recruitment or use of child soldiers.

(li) An offense described in section 3559(c)(2)(F) [18 USCS § 3559(c)(2)(F)], for which the offender was sentenced to a term of imprisonment of more than 1 year, if the offender has a previous conviction, for which the offender served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111), voluntary manslaughter (as described in section 1112 [18 USCS § 1112]), assault with intent to commit murder (as described in section 113(a) [18 USCS § 113(a)]), aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242 [18 USCS §§ 2241, 2242]), abusive sexual contact (as described in sections 2244(a)(1) and (a)(2) [18 USCS § 2244(a)(1), (2)]), kidnapping (as described in chapter 55 [18 USCS §§ 1201 et seq.]), carjacking (as described in section 2119 [18 USCS § 2119]), arson (as described in section 844(f)(3), (h), or (i) [18 USCS § 844(f)(3), (h), or (i)]), or terrorism (as described in chapter 113B [18 USCS §§ 2331 et seq.]).

(lii) Section 57(b) of the Atomic Energy Act of 1954 (42 U.S.C. 2077(b)), relating to the engagement or participation in the development or production of special nuclear material.

USCS                                           6

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515 50

3632

        **(liii)** Section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122), relating to prohibitions governing atomic weapons.

        **(liv)** Section 101 of the Atomic Energy Act of 1954 (42 U.S.C. 2131), relating to the atomic energy license requirement.

        **(lv)** Section 224 or 225 of the Atomic Energy Act of 1954 (42 U.S.C. 2274, 2275), relating to the communication or receipt of restricted data.

        **(lvi)** Section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), relating to the sabotage of nuclear facilities or fuel.

        **(lvii)** Section 60123(b) of title 49, relating to damaging or destroying a pipeline facility, but only if the conduct which led to the conviction involved a substantial risk of death or serious bodily injury.

        **(lviii)** Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

        **(lix)** Section 276(a) of the Immigration and Nationality Act (8 U.S.C. 1326), relating to the reentry of a removed alien, but only if the alien is described in paragraph (1) or (2) of subsection (b) of that section.

        **(lx)** Section 277 of the Immigration and Nationality Act (8 U.S.C. 1327), relating to aiding or assisting certain aliens to enter the United States.

        **(lxi)** Section 278 of the Immigration and Nationality Act (8 U.S.C. 1328), relating to the importation of an alien into the United States for an immoral purpose.

        **(lxii)** Any section of the Export Administration Act of 1979 (50 U.S.C. 4611 et seq.)

        **(lxiii)** Section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705).

        **(lxiv)** Section 601 of the National Security Act of 1947 (50 U.S.C. 3121), relating to the protection of identities of certain United States undercover intelligence officers, agents, informants, and sources.

        **(lxv)** Subparagraph (A)(i) or (B)(i) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(A) or (2)(A) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, dispense, or knowingly importing or exporting, a mixture or substance containing a detectable amount of heroin if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

USCS               7

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

(lxvii) Subparagraph (A)(viii) or (B)(viii) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(H) or (2)(H) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a mixture of substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

(lxviii) Subparagraph (A) or (B) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1) or (2) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, or knowingly importing or exporting a controlled substance, if the sentencing court finds that—

(I) the offense involved a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof; and

(II) the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

### (E) Deportable prisoners ineligible to apply time credits.

(i) **In general.**   A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).

(ii) **Proceedings.**   The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

**(5) Risk reassessments and level adjustment.**   A prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk reassessments not less often than annually, and a prisoner determined to be at a medium or high risk of recidivating and who has less than 5 years until his or her projected release date shall receive more frequent risk reassessments. If the reassessment shows that the prisoner's risk of recidivating or specific needs have changed, the Bureau of Prisons shall update the determination of the prisoner's risk of recidivating or information regarding the prisoner's specific needs and reassign the prisoner to

USCS                                                                                                  8

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



appropriate evidence-based recidivism reduction programming or productive activities based on such changes.

**(6) Relation to other incentive programs.**   The incentives described in this subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible.

**(e) Penalties.**   The Director of the Bureau of Prisons shall develop guidelines for the reduction of rewards and incentives earned under subsection (d) for prisoners who violate prison rules or evidence-based recidivism reduction program or productive activity rules, which shall provide—

**(1)** general levels of violations and resulting reductions;

**(2)** that any reduction that includes the loss of time credits shall require written notice to the prisoner, shall be limited to time credits that a prisoner earned as of the date of the prisoner's rule violation, and shall not include any future time credits that the prisoner may earn; and

**(3)** for a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress after the date of the rule violation.

**(f) Bureau of Prisons training.**   The Attorney General shall develop and implement training programs for Bureau of Prisons officers and employees responsible for administering the System, which shall include—

**(1)** initial training to educate officers and employees on how to use the System in an appropriate and consistent manner, as well as the reasons for using the System;

**(2)** continuing education;

**(3)** periodic training updates; and

**(4)** a requirement that such officers and employees demonstrate competence in administering the System, including interrater reliability, on a biannual basis.

**(g) Quality assurance.**   In order to ensure that the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons regarding the use of the System.

USCS                                          9

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 3634.  Report

Beginning on the date that is 2 years after the date of enactment of this subchapter [enacted Dec. 21, 2018], and annually thereafter for a period of 5 years, the Attorney General shall submit a report to the Committees on the Judiciary of the Senate and the House of Representatives and the Subcommittees on Commerce, Justice, Science, and Related Agencies of the Committees on Appropriations of the Senate and the House of Representatives that contains the following:

(1) A summary of the activities and accomplishments of the Attorney General in carrying out this Act.

(2) A summary and assessment of the types and effectiveness of the evidence-based recidivism reduction programs and productive activities in prisons operated by the Bureau of Prisons, including—

(A) evidence about which programs have been shown to reduce recidivism;

(B) the capacity of each program and activity at each prison, including the number of prisoners along with the recidivism risk of each prisoner enrolled in each program; and

(C) identification of any gaps or shortages in capacity of such programs and activities.

(3) Rates of recidivism among individuals who have been released from Federal prison, based on the following criteria:

(A) The primary offense of conviction.

(B) The length of the sentence imposed and served.

(C) The Bureau of Prisons facility or facilities in which the prisoner's sentence was served.

(D) The evidence-based recidivism reduction programming that the prisoner successfully completed, if any.

(E) The prisoner's assessed and reassessed risk of recidivism.

(F) The productive activities that the prisoner successfully completed, if any.

(4) The status of prison work programs at facilities operated by the Bureau of Prisons, including—

(A) a strategy to expand the availability of such programs without reducing job opportunities for workers in the United States who are not in the custody of the Bureau of Prisons, including the feasibility of prisoners manufacturing products purchased by Federal agencies that are manufactured overseas;

(B) an assessment of the feasibility of expanding such programs, consistent with the

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

## § 3633. Evidence-based recidivism reduction program and recommendations

**(a) In general.** Prior to releasing the System, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, the Attorney General shall—

**(1)** review the effectiveness of evidence-based recidivism reduction programs that exist as of the date of enactment of this subchapter [enacted Dec. 21, 2018] in prisons operated by the Bureau of Prisons;

**(2)** review available information regarding the effectiveness of evidence-based recidivism reduction programs and productive activities that exist in State-operated prisons throughout the United States;

**(3)** identify the most effective evidence-based recidivism reduction programs;

**(4)** review the policies for entering into evidence-based recidivism reduction partnerships described in section 3621(h)(5); and

**(5)** direct the Bureau of Prisons regarding—

    **(A)** evidence-based recidivism reduction programs;

    **(B)** the ability for faith-based organizations to function as a provider of educational evidence-based programs outside of the religious classes and services provided through the Chaplaincy; and

    **(C)** the addition of any new effective evidence-based recidivism reduction programs that the Attorney General finds.

USCS             1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

strategy required under subparagraph (A), with the goal that 5 years after the date of enactment of this subchapter [enacted Dec. 21, 2018], not less than 75 percent of eligible minimum- and low-risk offenders have the opportunity to participate in a prison work program for not less than 20 hours per week; and

(C) a detailed discussion of legal authorities that would be useful or necessary to achieve the goals described in subparagraphs (A) and (B).

(5) An assessment of the Bureau of Prisons' compliance with section 3621(h) [18 USCS § 3621(h)].

(6) An assessment of progress made toward carrying out the purposes of this subchapter [18 USCS §§ 3631 et seq.], including any savings associated with—

(A) the transfer of prisoners into prerelease custody or supervised release under section 3624(g) [18 USCS § 3624(g)], including savings resulting from the avoidance or deferral of future construction, acquisition, and operations costs; and

(B) any decrease in recidivism that may be attributed to the System or the increase in evidence-based recidivism reduction programs required under this subchapter [18 USCS §§ 3631 et seq.].

(7) An assessment of budgetary savings resulting from this subchapter [18 USCS §§ 3631 et seq.], including—

(A) a summary of the amount of savings resulting from the transfer of prisoners into prerelease custody under this chapter [18 USCS §§ 3601 et seq.], including savings resulting from the avoidance or deferral of future construction, acquisition, or operations costs;

(B) a summary of the amount of savings resulting from any decrease in recidivism that may be attributed to the implementation of the risk and needs assessment system or the increase in recidivism reduction programs and productive activities required by this subchapter [18 USCS §§ 3631 et seq.];

(C) a strategy to reinvest the savings described in subparagraphs (A) and (B) in other—

(i) Federal, State, and local law enforcement activities; and

(ii) expansions of recidivism reduction programs and productive activities in the Bureau of Prisons; and

(D) a description of how the reduced expenditures on Federal corrections and the budgetary savings resulting from this subchapter [18 USCS §§ 3631 et seq.] are currently being used and will be used to—

(i) increase investment in law enforcement and crime prevention to combat gangs of national significance and high-level drug traffickers through the High Intensity Drug Trafficking Areas Program and other task forces;

(ii) hire, train, and equip law enforcement officers and prosecutors; and

(iii) promote crime reduction programs using evidence-based practices and

USCS                                                    2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71515050

strategic planning to help reduce crime and criminal recidivism.

   **(8)** Statistics on—

      **(A)** the prevalence of dyslexia among prisoners in prisons operated by the Bureau of Prisons; and

      **(B)** any change in the effectiveness of dyslexia mitigation programs among such prisoners that may be attributed to the incorporation of dyslexia screening into the System and of dyslexia treatment into the evidence-based recidivism reduction programs, as required under this chapter [18 USCS §§ 3601 et seq.].

**HISTORY:**
Added Dec. 21, 2018, P. L. 115-391, Title I, § 101(a), 132 Stat. 5205.

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



Raul Baez 71515-050
Metropolitan Detention Center MDC BKLYN
PO Box 329002
Brooklyn NY 11232

****Official Business****

Office of Pro-Se clerk
United States District court
225 Cadmen Plaza East
Brooklyn NY 11202

Teddy Roosevelt Building

**CERTIFIED MAIL**

7019 0160 0000 0645 2868
7019 0160 0000 0645 2868

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery
Postage

Total Postage and Fees

Sent To  Office of Pro-Se Clerk / United States District C...
Street and Apt. No., or PO Box No.  225 Cadmen Plaza East
City, State, ZIP+4®  Brooklyn NY 11202

71515-050
BAEZ

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions